**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CRAIG CARRELL, ROBERT "GUNNAR" WARMBOLD, and ERNEST CASTILLO, | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-10-2523 |
| L&S PLUMBING PARTNERSHIP, LTD, and L&S PLUMBING (GP), LLC | § § § § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The defendants, L&S Plumbing Partnership, LTD, and L&S Plumbing (GP), LLC (together, "L&S") have moved to compel arbitration based on arbitration clauses in employment contracts signed by the plaintiff employees who filed this Fair Labor Standards Act ("FLSA") suit. (Docket Entry No. 14). The plaintiffs respond that the arbitration agreements are: (1) illusory due to a lack of mutual obligation; (2) unconscionable because the arbitration will impose excessive costs; and (3) unenforceable under the Dodd-Frank Wall Street Reform and Consumer Protection Act, 18 U.S.C. § 1514A. (Docket Entry No. 16, at 2). The defendants have replied. (Docket Entry No. 24). The defendants have also moved for protection against discovery requests sent by the plaintiffs. (Docket Entry No. 27). Based on the pleadings, the motion and response, the parties' submissions, and the applicable law, this court grants the motion to compel arbitration and, by separate order, dismisses this case without prejudice in favor of the arbitration. The motion for protection is granted. The reasons for these rulings are set out below.

**I.     Background**

The plaintiffs are current and former employees of L&S who claim that they were not paid for overtime hours as the FLSA requires. (Docket Entry No. 16, at 2). L&S required the plaintiffs to sign employment contracts containing the following language:

> 9.     Arbitration of all Disputes. **EXCEPT AS STATED IN PARAGRAPH 8, ANY DISPUTE BETWEEN EMPLOYEE AND THE COMPANY OR ANY OF THE COMPANY'S EMPLOYEES, REPRESENTATIVES OR AGENTS, IF NOT RESOLVED AMICABLY BY THE PARTIES THERETO, SHALL BE SUBMITTED TO AND DETERMINED IN MANDATORY, BINDING ARBITRATION.** The duty to arbitrate disputes shall be applicable to the greatest extent possible, and except as to equitable remedies as stated in Paragraph 8, shall apply to all Employee/Company disputes, including <u>without limitation</u> disputes involving any civil matter in contract or tort, breach of contract, conversion, wrongful termination, sexual or other forms of harassment, civil rights violations, any form of discrimination, wage and hour matters, and violation or interpretation of any federal, state or local statute, rule or regulation, as well as the arbitrability of any dispute. Such mandatory arbitration shall be held exclusively pursuant to the provision of the Federal Arbitration Act ("FAA") then in effect. Employee and the Company acknowledge that the business contemplated by this Agreement affects and is part of interstate commerce for purposes of application of the FAA. The arbitration shall be conducted in Dallas County, Texas before a single arbitrator under the rules of the American Arbitration Association applicable to such disputes(s) then in effect. Each party to the arbitration shall equally bear the expenses of the arbitration, and the decision of the arbitrator as to any matter submitted to arbitration shall be final, conclusive, binding upon and enforceable by all parties to the arbitration.  The duty to arbitrate disputes shall survive the termination of Employee's employment with the Company and this Agreement.
>
> **PLEASE READ THIS AGREEMENT CAREFULLY. IT CONTAINS A MANDATORY ARBITRATION PROVISION AND PROVIDES FOR OTHER RIGHTS AND OBLIGATIONS IN CONNECTION WITH THE EMPLOYMENT RELATIONSHIP. BY EXECUTING BELOW, EMPLOYEE ACKNOWLEDGES THAT HE OR SHE (I) HAS BEEN GIVEN**

**THE OPPORTUNITY TO CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT, (II) HAS READ AND UNDERSTANDS THIS AGREEMENT, AND (III) IS VOLUNTARILY ENTERING INTO IT.**

(Docket Entry No. 14, Ex 1-A (emphasis in original)).

## II.     The Applicable Legal Standards

The Federal Arbitration Act ("FAA") permits an aggrieved party to file a motion to compel arbitration when an opposing "party has failed, neglected, or refused to comply with an arbitration agreement." *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)); *see also* 9 U.S.C. § 4. FAA Section 4 provides that, when a party petitions the court to compel arbitration under a written arbitration agreement, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. The FAA "leaves no place" for the court to exercise discretion. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The court must direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. *Id.* Agreements to arbitrate must be enforced, absent a ground for revoking the contractual agreement. *Id.*

In considering a motion to compel arbitration under the FAA, a court employs a two-step analysis. "First, a court must determine whether the parties agreed to arbitrate the dispute in question. Second, a court must determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th

Cir. 2006) (internal citations and quotation marks omitted). "The first step of the analysis—whether the parties agreed to arbitrate the dispute in question—consists of two separate determinations: '(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Id.*; *see also Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1321 (5th Cir. 1994); *Ellis v. Schlimmer*, 337 S.W.3d 860, 861 (Tex. 2011). In determining whether the parties agreed to an arbitration provision subject to the FAA, the court applies state law governing contract formation. *First Options v. Kaplan*, 514 U.S. 938, 944 (1995). If there is a binding agreement to arbitrate, the court then decides whether the dispute is within the scope of that agreement. *Tittle*, 463 F.3d at 419. "The Federal Arbitration Act (FAA) expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Grp., L.L.C. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (quotations omitted); *EEOC v. Waffle House, Inc.*, 534, U.S. 279, 294 (2002). The duty to arbitrate remains one of contract; a court cannot compel parties to arbitrate issues they have not agreed to submit. *Tittle,* 463 F.3d at 418; *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) ("A party cannot be compelled to submit a dispute to arbitration unless there has been a contractual agreement to do so.")).

"Texas law renders unconscionable contracts unenforceable." *In re Poly-America*, *L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). "An arbitration agreement may render a contract unconscionable if 'the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating [his or her] federal statutory rights in the arbitral forum.'" *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 892 (Tex. 2010) (quoting *Green Tree*, 531 U.S. at 93). When a "party seeks to invalidate an

arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 92. "That inquiry requires a 'case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims.'" *Olshan Found. Repair Co.*, 328 S.W.3d at 894 (quoting *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549 (4th Cir. 2001).

### III.    Analysis

The plaintiffs do not dispute that the claims made the basis of this suit are covered by the arbitration agreement. The plaintiffs instead urge that the agreements are either revocable or unenforceable.

#### A.    Whether the Agreements are Illusory Due to a Lack of Mutual Obligation

"In the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a contract." *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (per curiam); *see also In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010). "A promise is illusory if it does not bind the promisor, such as when the promisor retains the option to discontinue performance." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex. 2009). When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract. *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 301–02 (Tex. 2009).

The plaintiffs argue that the agreements are illusory because the employee manual asserts a right by the employer to "rescind, modify or deviate from these or other guidelines, policies,

practices, or procedures as it considers necessary in its sole discretion . . . ." The case law does not support the plaintiffs' argument. *See In re 24R, Inc.*, 324 S.W.3d 564 (Tex. 2010) (holding that a separate arbitration agreement was not made illusory because an employee manual stated that the employer could "revoke, change or supplement guidelines at any time without notice"). The defendants' employment handbook or manual reserves the employer's general right to change the manual policies or guidelines. The employment agreements the plaintiffs signed stated that they could be modified only by a written agreement signed by the employee and the company. The case law is clear that such an employment agreement is not illusory because of the language in the employee manual. Here, as in *24R,* "the arbitration agreement makes no mention of the right to change its terms, nor does it mention or incorporate by reference the employee manual." *24R*, 324 S.W.3d at 567. The manual clearly states that it is not a contract. As in *24R*, the plaintiffs' argument rests on "whether the validity of the arbitration agreement is affected by language from a non-contractual employee policy manual." *Id.* Although language in the employee manual recognizes the existence of an arbitration agreement, the manual does not diminish the validity of the separate, stand alone arbitration agreement. Under the clear case law, the arbitration agreements are not illusory.

    **B.**  **Whether the Arbitration Agreements Are Unconscionable**

    The plaintiffs argue that the arbitration agreements are unenforceable because the provisions requiring that arbitration be held in Dallas County and that each party bear an equal share of the expenses make the agreements unconscionable. In *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), the Supreme Court held that a California law providing that courts may refuse to enforce any contract found "to have been unconscionable at the time it was made," or may "limit

the application of any unconscionable clause." CAL. CIV. CODE ANN. § 1670.5(a) (West 1985), could not be applied to allow courts to refuse to enforce arbitration contracts that waived class actions in arbitration proceedings. The Supreme Court held that because this California rules "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" it was preempted by the FAA. *AT&T Mobility LLC*, 131 S.Ct. at 1753.

Under Texas law, the party opposing arbitration bears the burden of showing that the costs of arbitration make it unconscionable. In *In re Olshan Foundation Repair Co.*, 328 S.W.3d 883, 893 (Tex. 2010), the Texas Supreme Court emphasized that the bar for holding arbitration clauses unconscionable could not be "too low," rejecting the argument that a risk of "prohibitive costs" on the claimant was sufficient. The issue is whether the arbitral forum in a particular case is an adequate and accessible substitute for litigation. The Texas Supreme Court has cited with approval an approach of analyzing the claimant's ability to pay the arbitration costs, the difference in costs between arbitration and litigation in court, and whether the cost differential is so substantial as to deter the claims. *Olshan Found. Repair*, 328 S.W.3d at 893 (citing *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549 (4th Cir. 2001)). It is unnecessary to decide whether Texas law is incompatible with the FAA because applying Texas law does not make the arbitration agreements unconscionable.

The plaintiffs have provided affidavits describing their income and the expenses they will incur in traveling to Dallas for arbitration. (Docket Entry No. 16). The plaintiffs cite *In re Poly-America, L.P.*, 262 S.W.3d 337, 356 (Tex. 2008), to argue that they have met their burden to show that the costs and the fee splitting provision deter enforcement of their statutory rights. The plaintiffs list the costs of arbitrating in Dallas, including a filing fee, hearing room rental, arbitrator

expenses, travel, meals, and lodging, for a total of as much as $5,000 per plaintiff. (Docket Entry No. 16, at 17–18).

The affidavits, however, do not compare the relevant costs to the costs of litigation. The majority of the costs cited, such as the arbitrator's expenses, filing fee, and hearing room fee, would be incurred regardless of whether the dispute was arbitrated in Houston or in Dallas. The plaintiffs' expenses might also be capped at $175 depending on whether the American Arbitration Association determines that the dispute arose from an employer negotiated plan, or from an individually negotiated employment plan. (*Id.* at 16 n.2). Because the costs of arbitration would likely be limited in comparison to the costs of litigation, and because the varying levels of arbitration costs provided by the plaintiffs only indicate "a risk" of expenses that could deter enforcement of statutory rights, the plaintiffs have not met their burden of showing unconscionability.

### C. Whether the Arbitration Agreements Are Unenforceable Under the Dodd-Frank Wall Street Reform and Consumer Protection Act

The plaintiffs argue that under § 922 of the Dodd-Frank Act, 18 U.S.C. § 1514A(e), any predispute arbitration agreement is invalid. The defendants respond that the section of the Dodd Frank Act and the Sarbanes-Oxley Act that it amended address protection for whistleblowers, and the plaintiffs are not in this category. The defendants also argue that they are not a publicly traded company or otherwise covered by the whistleblower statute. *See* 18 U.S.C. § 1514A(a) (setting out the kinds of companies covered). The plaintiffs did not respond to or contravene this second point, which makes the statute they rely on inapplicable. The Dodd-Frank Act does not provide a basis to find the arbitration agreements unenforceable.

### III. Conclusion

The arbitration agreement is neither unconscionable nor illusory. The defendants' motion

to compel arbitration is granted. This case is dismissed, without prejudice, to permit the arbitration to proceed. The motion for protection is granted.

        SIGNED on August 1, 2011, at Houston, Texas.

                                Lee H. Rosenthal
                            United States District Judge